## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION AT LAFAYETTE

|  |  |  |
|---|---|---|
| BRADLEY LEE BROWN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 4:20-CV-24-JEM |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Bradley Brown on April 7, 2020, and Plaintiff's Opening Brief [DE 23], filed December 28, 2020. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On February 8, 2021, the Commissioner filed a response, and Plaintiff filed his reply on February 22, 2021. For the foregoing reasons, the Court remands the Commissioner's decision.

### I.    Background

On August 8, 2017, Plaintiff filed an application for benefits alleging that he became disabled on May 1, 2017. Plaintiff's application was denied initially and upon consideration. On January 8, 2019, Administrative Law Judge ("ALJ") James E. MacDonald held a hearing at which Plaintiff, along with an attorney and a vocational expert ("VE"), testified. On March 1, 2019, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2.    The claimant has not engaged in substantial gainful activity since May 1, 2017, the alleged onset date.

1

3.  The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; history of lumbar fusion; non-epileptic spells; migraine headaches; adjustment disorder; and generalized anxiety disorder.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

5.  The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant can never climb ladders, ropes or scaffolds but can occasionally use ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid all exposure to wet, slippery surfaces; unprotected heights; or moving mechanical parts. The work must require no commercial driving. The claimant can understand and remember simple instructions and carryout simple tasks with simple work-related decisions and judgments in two-hour segments allowing for normal breaks. The claimant can tolerate occasional interaction with supervisors and coworkers; but no interaction with the general public as part of his job duties. The claimant requires a moderate noise environment as defined in the Selected Characteristics of Occupations.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was a younger individual age 18-44 on the alleged disability onset date.

8.  The claimant has at least a high school education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2017 through the date of this decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final

decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE 16]. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.      Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*,

381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III.   Analysis

Plaintiff argues that the ALJ erred in assessing Plaintiff's physical RFC and failed to adequately reflect Plaintiff's concentration-related limitations in his mental RFC. The Commissioner argues that the ALJ's decision was supported by substantial evidence.

A number of medical experts assessed Plaintiff's work-related abilities. The ALJ found that Plaintiff was more physically limited than the state agency physicians concluded and disregarded the opinion of Plaintiff's treating neurologist. Dr. Du opined that after the non-epileptic seizures, Plaintiff would suffer from confusion, muscle strain, severe headache, irritability, exhaustion, and

4

paranoia. *Id.* The neurologist wrote that Plaintiff would need to take multiple breaks during an eight-hour work day, and that he would miss more than four work days per month if he were "around people." *Id.* The ALJ found that Dr. Du's opinion was "not supported by or consistent with the objective evidence" because Plaintiff "has had all normal testing for his seizures, and admitted to improvement in his spells with Keppra [medication]" and "had improvement in his anxiety with medication." AR 18.

Plaintiff argues that the ALJ erred in concluding that the neurologist's opinion was inconsistent with normal testing for Plaintiff's seizures, since non-epileptic seizures show similar symptoms to those of an epileptic seizure, but without any of the unusual activity in the brain experience during epileptic seizure, and "normal" tests are used to confirm the presence of non-epileptic spells as opposed to epileptic seizures or other physical conditions. No doctor suggested that these normal tests indicated that Plaintiff was not suffering from non-epileptic spells, nor did any doctor speculate that the normal testing indicated the spells were either less frequent or less severe than alleged. On the contrary, multiple medical records describe Plaintiff's non-epileptic spells and his tremors, and medical professionals noted that the normal testing indicated these were non-epileptic seizures rather than epileptic seizures. A discussion of the EEG stated that Plaintiff was suffering from "likely nonepileptic seizures related to mental health" that are "resistant to anticonvulsant medications," not that the seizures are not occurring or do not limit Plaintiff. AR 647. The most charitable reading is that the ALJ's determination that normal EEGs and other testing indicated that Plaintiff's nonepileptic spells were not as severe as alleged is a mistaken reading of the evidence, as EEGs and other testing is used to rule out epileptic seizures and other physical conditions rather than to determine the severity of the nonepileptic events. However, the ALJ is required to rely on expert opinions and should not determine the significance of medical testing

5

himself. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

The ALJ also appears to have ignored evidence that ran contrary to his opinion. The record demonstrates that Plaintiff suffered from dizziness and tremors, with no change in seizures since starting Keppra, and no benefit even after tripling the dose. AR 630, 636, 647. Although Plaintiff occasionally noted that his symptoms improved on Keppra, AR 745, multiple medical notes stated that he was not improving on Keppra, and his dosage was regularly increased until it was discontinued. AR 607, 609, 647. The ALJ may not cherry-pick evidence that supports his conclusion while ignoring evidence to the contrary. *See Denton v. Astrue*, 596 F.3d 419, 426 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). The ALJ's complete disregard of the opinion of Plaintiff's treating neurologist was based on ignoring significant evidence in the record and misunderstanding other evidence, apparently based on a mistaken understanding of how nonepileptic seizures are diagnosed.

Plaintiff also argues that the RFC is unsupported by evidence. In particular, Plaintiff argues that does it not address Plaintiff's time off-task as a result of his non-epileptic spells. This case is being remanded for a new determination of the effects of his seizures, and the new RFC should incorporate all limitations related to his seizures. In addition, Plaintiff argues that the ALJ erred in failing to explain how Plaintiff's moderate limitations in concentration, persistence, and pace were incorporated into the RFC, particularly since the ALJ did not include those limitations in the questions addressed to the VE. "When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *see also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir.

2014); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). In particular, "the question must account for documented limitations of 'concentration, persistence or pace.'" *Stewart*, 561 F.3d at 684 (citing cases). "Although it is not necessary that the ALJ use the precise terminology of 'concentration,' 'persistence,' or 'pace,' [courts] will not assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record." *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015). The RFC merely limited Plaintiff to "simple tasks with simple work-related decisions" and no interaction with the public, but did not even include a lack of production requirement. *C.f., e.g., DeCamp v. Berryhill*, 916 F.3d 671, 675-76 (7th Cir. 2019) ("[T]here is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace."); *Yurt*, 758 F.3d at 858-59 ("[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."); *Stewart*, 561 F.3d at 684-85 (rejecting the contention "that the ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"). The Court also notes that, although the ALJ remarked on Plaintiff's reported use of a cane, he did not incorporate the need for an assistive device in the RFC, apparently because it was not prescribed by a physician and Plaintiff did not need to use it all the time. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription."). On remand, the ALJ is reminded of the requirement to draw a logical bridge between Plaintiff's limitations, including limitations in concentration, persistence, pace and the need for even occasional assistance with

ambulation, and his assessment of Plaintiff's RFC.

On remand, the ALJ is directed to consider all of the medical evidence and opinions in the record. The ALJ should fully consider each of Plaintiff's alleged impairments, alone and in combination, and provide a logical bridge from the evidence to his conclusion.

## VI.    Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 23] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 15th day of September, 2021.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:   All counsel of record